IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:13-CV-76-H

ROBERTA SPILKER, Individually )
and as Executrix of the Estate of )
FRANKLIN J. SPILKER, JR., deceased, )
                                            )
             Plaintiffs, )
                                            )          O R D E R
                   v. )
                                            )
MEDTRONIC, INC., and MEDTRONIC )
CRYOCATH LP, )
                                            )
            Defendants. )

The instant matter is before the court on Plaintiff's motion to quash and/or modify Defendants' subpoena *duces tecum* to Pitt County Memorial Hospital (d/b/a Vidant Medical Center) ("Vidant") [DE-48], a non-party to the present action. Defendants have responded in opposition [DE-51] to the motion and the matter is ripe for ruling. For the reasons that follow, the motion to quash is DENIED.

## BACKGROUND

Plaintiff Roberta Spilker ("Plaintiff") filed this action individually and as Executrix of the Estate of Franklin J. Spilker, Jr., ("Decedent"), against Defendants alleging claims of negligence, breach of warranty, unfair trade practices, consortium and wrongful death.[1] The complaint was initially filed in state court then removed to federal court on the basis of this court's diversity jurisdiction. The allegations of the complaint arise from Decedent's death, following a cardiac cryoablation, a medical procedure performed by medical personnel at Vidant using a medical

---

[1] While Plaintiff has sued Defendants in two capacities, the parties have referred to Plaintiff in ths singular. Accordingly, this order will reflect the manner in which the parties have referred to Plaintiff.

device manufactured and marketed by Defendants. [DE-22].

According to Plaintiff's motion, prior to the commencement of the instant lawsuit, Plaintiff and Vidant entered into a confidential settlement agreement releasing Vidant from liability resulting from Decedent's death. [DE-49] at 1. While Defendants are aware of the fact of a settlement between Plaintiff and Vidant, Defendants are not aware of the settlement amount or the particular terms and conditions of the settlement. According to the motion, Plaintiff's settlement agreement with Vidant contains a confidentiality provision stipulating that the settlement sum as well as the terms and conditions of the settlement and of Vidant's subsequent release are confidential. [DE-49] at 2. Plaintiff states further that the settlement negotiations between Plaintiff and Vidant occurred primarily through counsels' written correspondence discussing the terms and conditions and the settlement amount, in which Plaintiff's counsel shared his mental impressions and other opinions regarding Plaintiff's pursuit of claims against Defendants. *Id.* at 1-2. Plaintiff states that after settlement had been consummated between Plaintiff and Vidant, Plaintiff's counsel continued to correspond with Vidant in its investigation of the case. *Id.* at 2.

On May 7, 2013, after the commencement of the instant lawsuit, Defendants served upon Vidant a subpoena *duces tecum* seeking various documents related to Decedent. [DE-49-1]. Relevant to the instant motion, Defendants seek the following documents from Vidant:

> Request No. 2: All documents and communications relating to the Decedent's cryoablation procedure.
>
> Request No. 3: All documents and communications relating to any investigation, inquiry, or study into the Decedent's cryoablation procedure and death, including but not limited to any video or audio recordings of any such investigation.

2

> Request No. 4: All documents and communications relating to any discussions that any person associated with you, including your attorneys, has had with Plaintiff Roberta Spilker and/or anyone associated with her, including her attorneys.
>
> Request No. 5: All documents and communications relating to any discussions that any person associated with you, including your attorneys, has had regarding the Decedent and/or the Plaintiff with anyone representing Plaintiff Roberta Spilker or the Decedent, including but not limited to Wayne Grant, Kimberly Grant, Jonathan Parrish, J. Michael Malone, any other attorney at the Law Offices of Wayne Grant, P.C., or any other attorney at Hendren & Malone, PLLC.
>
> Request No. 6: All documents and communications relating to, or exchanged during, any settlement discussions you or anyone associated with you has had regarding the Decedent's cryoablation procedure and/or death.
>
> Request No. 7: All documents reflecting any agreements you reached with Plaintiff and/or anyone associated with her, including her attorneys.

[DE-49-1] at 10-11.

On June 6, 2014, Plaintiff filed the instant motion seeking to quash or modify Defendants' subpoena *duces tecum* to Vidant on the grounds that the disputed requests seek certain information that is privileged and confidential. In particular, Plaintiff claims that correspondence between Plaintiff and Vidant, including the settlement agreement itself, are privileged because they were made in furtherance of reaching settlement, and that some settlement correspondence may be shielded further from disclosure as attorney work product. *Id.* at 3. Plaintiff contends that correspondence between Plaintiff and Vidant related to Plaintiff counsel's investigation of Decedent's death is work product and should not be discoverable. *Id.* For its part, Vidant has not sought court action related to the subpoena *duces tecum*, and while it appears from the parties' filings that there may have been preliminary communications about Vidant providing some of the disputed materials to Defendants, Vidant has not made known to the court its position regarding the documents sought by Defendants.

3

In sum, Plaintiff posits two grounds on which to support her motion to quash: (1) a settlement privilege shields from disclosure certain documents relating to Plaintiff's settlement with Vidant and (2) certain correspondence from Plaintiff's counsel to Vidant is protected from discovery by the attorney work product doctrine. [DE-49] at 2-3.

## DISCUSSION

Subpoenas issued to third parties are governed by Rule 45 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents and tangible things or to permit an inspection."). "In response to such a subpoena, a non-party may either file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45[(d)](3)(A), move for a protective order pursuant to Fed. R. Civ. P. 26(c), or oppose a motion to compel production of the subpoenaed documents pursuant to Fed. R. Civ. P. 45[(d)](2)(B)." *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002)). "'Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.'" *United States v. Gordon*, 247 F.R.D. 509, 509-10 (E.D.N.C. 2007) (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)). Since a party does not ordinarily have standing to challenge a subpoena issued to a nonparty unless the party claims some privilege in the information sought by the subpoena, *Gordon*, 247 F.R.D. at 509-10, the party claiming such privilege bears the burden of demonstrating its applicability – here a so-called "settlement privilege" and the attorney work product doctrine. *See Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011); *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th

4

Cir. 2003). Accordingly, whether Plaintiff has standing to challenge the third-party subpoena *duces tecum* will turn on the viability of Plaintiff's asserted privileges.

## A. Settlement Privilege

Plaintiff first contends that she has standing to challenge Defendants' subpoena directed to Vidant because Defendants seek a copy of the settlement agreement between Plaintiff and Vidant and correspondence containing settlement terms and conditions in which Plaintiff asserts a privilege. [DE-49] at 6. Plaintiff points to the Sixth Circuit case of *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) to support the notion that settlement negotiations and agreements arising therefrom are privileged, and Plaintiff urges this court to adopt the same standard. Plaintiff argues further that this information is not admissible pursuant to Federal Rule of Evidence 408 and discovery of such information should therefore not be allowed. [DE-49] at 7.

However, when determining whether a settlement agreement is producible in discovery, courts in the Fourth Circuit have found that relevance, rather than admissibility, is the appropriate inquiry. *Selective Way Ins. Co., v. Schulle*, No. 3:13cv00040, 2014 WL 462807, at *1 (W.D. Va. Feb. 5, 2014) (citing cases); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, No. CCB-03-3408, 2012 WL 628493, at *3 (D. Md. Feb. 24, 2012) ("The Fourth Circuit, like the majority of courts, has declined to recognize a federal settlement privilege"); *Polston v. Eli Lilly and Co.*, No. 3:08-3639, 2010 WL 2926159, at *1 (D.S.C. July 23, 2010) ("The Fourth Circuit has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents."). Accordingly, the court declines to adopt the heightened review afforded by the Sixth Circuit in *Goodyear* as urged

5

by Plaintiff, and will instead apply the liberal standard of relevance set forth in Fed. R. Civ. P. 26(b)(1). *See Selective Way Ins. Co.*, 2014 WL 462807, at *2.

In the present case, the settlement agreement is relevant to assess Defendants' exposure to possible damages. North Carolina has adopted the Uniform Contribution among Tort-Feasors Act, N.C. Gen. Stat § 1B-1 *et seq*. (the "Act"). The Act creates joint and several liability for those responsible "for the same wrongful death" and a right of contribution among joint tortfeasors. N.C. Gen. Stat. § 1B-1. The Act further allows any one joint tortfeasor to settle with a plaintiff and foreclose any contribution claim from the other tortfeasors if the settling parties acted in good faith. *Id.* § 1B-4. Since Vidant, a potential joint tortfeasor, has settled with Plaintiff, Defendants are entitled to discover whether Defendants have a claim for contribution. *See Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 646, 535 S.E.2d 55, 62 (2000) (holding a trial court should consider from the totality of the circumstances whether settlement was reached in good faith in accordance with the North Carolina Uniform Contribution among Joint Tortfeasors Act).

The Act also reduces the amount Defendants would be obligated to pay in damages by the amount of a prior settlement in the form of a setoff. *See* N.C. Gen. Stat. § 1B-1 (Right to Contribution); *see Selective Way Ins. Co.*, 2014 WL 462807, at *2 ("[T]he terms of the [settlement] releases are relevant to the non-settling defendants' continued liability and right of setoff [under Virginia law], and, in turn, the insurers' exposure in the instant action."); *Barclay v. Gressit*, No. 2:12-cv-156-JHR, 2013 WL 3819937, at *3 (D. Me. July 24, 2013) ("Courts have readily discerned the relevance to a non-settling joint tortfeasor of information regarding a settlement agreement between a plaintiff and a settling joint tort-feasor when, pursuant to

6

applicable state law, the non-settling defendant is entitled to a setoff of the settlement amount from any verdict in favor of the plaintiff, or the non-settling defendant's rights and obligations depend in some other way on the terms, amount, and/or value of the settlement.") (citing cases).

Additionally, the production of the settlement agreement between Plaintiff and Vidant may promote a fair and equitable alternative resolution of the claims in a transparent manner. *See Selective Way Ins. Co.*, 2014 WL 462807, at *2; *Bennett v. La Pere*, 112 F.R.D. 136, 141 (D. R.I. 1986) ("The Hospital is faced with a substantial damages suit and the court is confronted with the prospect of a lengthy and involved trial. To the extent that the Hospital's ability realistically to evaluate the plaintiffs' case against it depends upon an awareness of the terms and conditions of the settlement with the codefendants—and it plainly depends on that information to a meaningful degree—the remaining defendant should not be left to grope blindly in the dark. So long as the policy of the [Federal] Rules [of Civil Procedure] is the promotion of the "just, speedy, and inexpensive" resolution of cases, then fair settlements must always be encouraged. Fairness cannot be achieved when one side is needlessly blindfolded."). Finally, though not raised directly by Plaintiff, any concern she may have regarding the sensitivity of the documents may be adequately mitigated by the entry of a protective order. *See Barclay*, 2013 WL 3819937, at *4. Indeed, the parties filed a joint Stipulation for Protective Order, approved by the court, which contemplates the discovery of materials the parties may consider confidential. [DE-37]. Accordingly, the court finds Plaintiff has failed to carry her burden of demonstrating a privilege sufficient to provide her standing to challenge Defendants subpoena *duces tecum* to Vidant seeking to discover the settlement agreement, terms and conditions of settlement and the release of Vidant.

7

### B. Attorney Work-Product Protection

Plaintiff objects next to Defendants' document requests to the extent Defendants seek the production of correspondence written by Plaintiff's counsel to Vidant on the grounds that such material is shielded from discovery as attorney work product. [DE-49] at 7-12. Plaintiff states that the correspondence at issue was sent by counsel to Vidant as part of Plaintiff's investigation of matters related to this lawsuit and was drafted in preparation for this litigation. These communications also encompass correspondence related to settlement and according to Plaintiff also contain opinion and non-opinion work product. Specifically, Plaintiff indicates the correspondence prior to settlement with Vidant contains expressions of opinions regarding Defendants' responsibilities and reflect attorney thought processes. Correspondence from Plaintiff's counsel to Vidant after settlement is related to the coordination of a visit to the medical facility, discussing documents or tangible evidence that may exist and obtaining names of individuals for investigative interviews.

In matters involving the attorney work product protection, federal courts are to apply federal law, as opposed to state law, even in cases premised on the court's diversity jurisdiction. *See Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 605 (M.D.N.C. 1992); *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 584 (S.D. W. Va. 2002) (finding that federal case law applying Rule 26(b)(3) of the Federal Rules of Civil Procedure defines the scope of the work product doctrine in a diversity case).

The work product doctrine, as codified in Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, is based on the Supreme Court's seminal decision in *Hickman v. Taylor*, 329 U.S. 495 (1947), and protects against the disclosure of certain materials "prepared in anticipation of

8

litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The proponent of work product protection has the burden of establishing its applicability. *Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992).

A court is required, on a timely motion, to quash or modify a subpoena that ". . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). The work-product immunity may be "waived if the client, the client's lawyer, or another authorized agent of the client: . . . (4) discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it." *Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 772 (D. Md. 2008) (quoting Restatement (Third) of the Law Governing Lawyers § 91 (2000)). "The purpose of the work-product privilege . . . is to prevent an outside opposing party from securing the protected information rather than to prevent the outside world generally from obtaining the information." *Id.* (quoting *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 51-52 (D.C.N.Y. 1979)). "Voluntary disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy underlying the privilege." *Id.* (quoting *Mudge v. United States*, 308 F.3d 1220, 1223 (Fed. Cir. 2002)). Regarding waiver of the protection afforded by the attorney work product, the Fourth Circuit has held that the

> [d]isclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver. However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly

9

> increasing the possibility that an opponent will obtain and use the material, he
> may be deemed to have waived work product protection.

*Doe v. United States*, 662 F.2d 1073, 1081 (4th Cir. 1981) (citing cases). Moreover, the "release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, regardless of the relationship between the attorney and the recipient of the material." *Id.* "[D]isclsoure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material." *Id.*

Plaintiff argues that there has been no waiver of the work product protection by its correspondence with Vidant, a third party. In particular, Plaintiff contends that she and Vidant share a common legal interest, that Defendants' interests and those of Vidant are in fact adverse, and that Plaintiff's disclosure of information to Vidant did not substantially increase the ability of Defendants to gain the information. [DE-49] at 10-11. Accordingly, Plaintiff asserts she had no expectation that Vidant would share the information with Defendants.

First, Plaintiff has failed to identify the common legal interest she shares with Vidant beyond her conclusory statement, and has failed to convincingly articulate the adverse nature of the interests between Vidant and Defendants. *See e g., Synovus Bank v. Karp*, No. 2013 WL 3927604, at *2 (W.D.N.C. July 29, 2013) ("A party cannot establish a common interest [privilege] by relying solely on counsel's conclusory allegation that the communications were privileged based on the common interest in the litigation.") (citations and quotations omitted). Indeed, it appears the only commonality in interest between Plaintiff and Vidant that the court may discern is presumably their respective interests in resolving the dispute between them, the negotiated settlement. However, as noted above, the courts within this circuit have cautioned

against the finding of any such privilege. Accordingly, to find the settlement between Vidant and Plaintiff to be a common interest sufficient to bring those related communications within the protection of the attorney work-product doctrine would be the equivalent of recognizing a settlement privilege, which this court is not inclined to do. Next, the relationship between Vidant and Defendants, who share a common Plaintiff here appears to be more congruent than that between Vidant and Plaintiff. Under these circumstances, the court finds that the disclosure of information to Vidant did in fact substantially increase the likelihood Defendants would obtain the information. The court notes also that Plaintiff has not articulated that she intended to limit the dissemination of the materials to Vidant which she now contends are protected by the work-product doctrine. Indeed, the fact that the parties contemplated producing some of the disputed materials suggests the prospect of dissemination was not wholly unanticipated.

In sum, assuming the attorney work product applies to the documents identified by Plaintiff, the court finds that the protection has been waived by Plaintiff's disclosure of the documents to Vidant. Accordingly, Plaintiff does not have a privilege to assert as to these documents and thereby fails to have standing to challenge their disclosure by Vidant in response to the subpoena *duces tecum*.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to quash [DE-48] is DENIED.

SO ORDERED, the 24th day of September 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

11